I apologize your honor. I'm just joking. You may begin. May it please the court. I represent two petitioners in this case, two local groups with members who live nearby a proposed facility that have authorized would would authorize the construction of the largest single source of air pollution in the entire Texas Rio Grande Valley. These petitioner groups have members who live nearby the facility in low income neighborhoods and work in the shrimping fishing and tourism industries that will be affected by this facility yet. Help me with your cause of action. I'm I'm I read the letter briefs very carefully. Yes. And my understanding from everyone involved in this case is that the principal basis for the for everyone being here today is section 717 are subsection D. It gives this court original exclusive jurisdiction over any civil action challenging this particular permit title 28 section 1331 the general federal question statute is virtually identical. It says we have original jurisdiction over all civil actions arising under the Constitution laws treaties United States. Do you think that 1331 gives us or would give anyone obviously gives us jurisdiction when you give anyone a cause of action to raise any question under the Constitution laws and treaties United States. I don't think we need to go that far in this case. The terms are virtually identical. You agree you have to have a cause of action to be here. Right. Yes. And so how does the text that's virtually identical materially identical to 1331 give you the cause of action. The text specifically is more specific in the natural gas act in that it talks about review of an order or action of a federal agency or state agency any civil action to review. So what is the civil action. What is the what is the nature of it. Who can you sue. What kind of remedy can you get. Right. I mean the Supreme Court has told us over and over that we need to look in the statutory text to find the basis for the cause of action. And I'm looking at it. It certainly says we have jurisdiction. I totally get that. Just like 1331 which is obviously necessary and obviously not sufficient. Right. So. So we need to find some other thing that would give us the civil action. We also pointed to the federal APA. Your Honor. But that defines an agency as a federal agency. 551 the definitional provision of the APA says agency. The person you can sue under the APA cause of action is a federal agency and you're not suing a federal agency. The under the Natural Gas Act it can be a state agency acting pursuant to federal law. No one. None of the parties in this case contest that TCEQ. It fits that definition. And and the only other circuits to have addressed this question have either found under the plain language of the Natural Gas Act that it provides a cause of action or that you look to the APA incorporates the default rule of the APA. I read the Third Circuit's opinion. Yeah. I read the Third Circuit's opinion very carefully and I understand what they're saying. But they're not answering the question that I'm asking you which is what is the cause. Again I get the jurisdiction. Right. But it would seem like you would need to point to some other thing that would give you a civil action. And the civil action that it sounds like the thing that we're talking about that everyone's contesting in this case the reason we're here today is your clients want a contested case hearing which you know as a resident of Texas I understand that notion. And I get that. I see that in state court all the time. But this is the first time I've ever seen it in federal court that someone would ask bring a state law cause of action for a contested case hearing under that jurisdictional provision. I agree with you. Your Honor it's it's unusual. I think for a lot of us in the environmental field this is an unusual procedural posture. We're usually in state court. We have this unique statute here in the Natural Gas Act that provides exclusive jurisdiction and and the other cause of action is you want a contested hearing. We want to remand for a correct but you're asking for your right to in your view to a contested hearing that you were deprived of. Correct. And and that's a civil action. Is that your argument. I mean yes. And that it's reviewing a final agency action which is this order issued by TCEQ in December of 2018 which denied the contested case hearing and issued the permit. But what if Congress passed a statute that said the Fifth Circuit has original and exclusive jurisdiction over any breach of contract action. That's a that's a civil action. Could they do that. Congress write that statute. I don't know the answer to that question. Your Honor. I don't know that anybody's contested that the environment impacts particularly environment in Brownsville impacts interstate or really intercountry commerce. The the time and the reason we're here is because of the language or a state administrating its administrative agency acting pursuant to federal law. And this is because the way the Clean Air Act. I mean is the Clean Air Act unconstitutional because that's really where this question line of question seems to be taking us. So go ahead and address it directly. Is there federal power to create a Clean Air Act. Yes. I think you could say yes. Now why. That's not at all my question. But the question I have is what is your cause of action. And I'm just trying to understand. It says any civil action but it doesn't purport to create one. And and then the again the other courts that have reviewed this your honor look to the federal APA of what the agent what what this court can do and how it reviews the agency action. OK. Why don't you tell us why your clients have standing. Why they're any different from everybody else who's driving through this lovely picture or map or whatever it is that you gave us. Yes I provided the map which is from the records your honor just so we have a sense of the area and our clients have standing because all parties in this case agree on two legal principles that apply to the affected person determination. One is that the standard should not be narrower than Article 3 standing and to that the affected person determination should not be a merits based determination of harm at the standing face. Here TCEQ misapplied these standards because it it continually asserts in briefing and in the record that our clients do not have personal judiciable interests that are distinct from the general public just because many other people may have the same interest just because there may be other shrimpers. There may be other people who travel on the roads there may be other people who live in the nearby towns. And with that argument doesn't everybody that lives in Brownsville that drives up to 48 to go to Padre Island or everybody that lives in Port Isabel that drives down 48 to go to Brownsville. They'd all have standing. We'd have 300000 people with standing wouldn't we. Your honor the Supreme Court has stated that standing is not to be denied simply because many people suffer the same injury in the United States versus. They haven't suffered an injury. Their whole argument is we might sometime for some reason suffer some injury. That's all of us. The correct standard should be whether there's a geographic nexus and it doesn't. Anybody that owns a let's say they live in Brownsville they work in Brownsville but they own a condo on the island of which there are thousands. They all have standing. They would have to state a personal judiciable interest. Well they drive up and down 48. At some time they might be driving near the gas plant. It might blow up and it might do something to them. I mean the same thing you could be said about any of the industries up and down the ship channel. You know they might the industry there that tears up old Navy ships might accidentally release asbestos into the air. Wouldn't they be able to stop that industry. There are two answers to that Your Honor. The first is again the U.S. Supreme Court said the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process. So simply the fact that many people could be impacted is not the correct legal standard. The correct legal standard. So the answer to my question is yes under your argument everybody would have that same standard. If there is so under the geographic nexus test you have to show that discharges will reach the areas where these standing witnesses have interests. And so we have shown undisputed evidence from the record that the 8000 tons per year of new air pollutants that will come from this facility do not stop at the fence line. They go further than the fence line. And based on just one piece of evidence from the applicants own modeling that that will travel at least 14 miles. So there's and there's many more pieces of evidence in the record that show how far it will travel. There will be increased air pollution. This is in contrast to other cases from this court such as the recent Center for Biological Diversity case. This isn't a large geographic area like the Gulf of Mexico. And petitioners here have shown that they are in the vicinity of these discharges. They not only the travel but even if you just look at where Miss Burnell works or where Miss Avila lives it's they're five miles away. That's that is within the area that it's undisputed in the record there will be additional increases in air emissions. So this is one example of how TCEQ has misapplied this legal standard. You don't think affected persons is a narrowing term. No, Your Honor, because it's. It could impact the Gulf of Mexico then from Florida to Texas. We got a lot of people that have standing. Your Honor, they would have to show just as as described in the Center for Biological Diversity case. The geographic nexus to where the emissions in this case are coming from and how it will how their interests will be impacted. And the standard is a person who has a personal judiciable interest related to a legal right, duty, privilege, power or economic interest affected by the administrative hearing. Other way. Texas to California. Anyway, I'm not very good at geography, but a lot of people would be affected. So that's what I'm trying to. And the point is this is a very large facility in terms of the number of emissions. And so it really does. It's a fact specific analysis based on the source of pollution you're looking at. In this case, we've identified what the facility is. It's not a rulemaking where we you don't know where necessarily the pollution is coming from. We know where it's coming from. We know the amounts that they're authorized to pollute. We know based on the actual meteorological conditions used in their modeling how far those additional air emissions will travel. That under the case law is enough at the standing phase to show that there are personal judiciable interests not common to the general public. And I'm sorry, I'll correct myself again. I think I was right the first time. Mexico is Texas to California. Gulf of Mexico is the other direction. I apologize. The point being, I see affected persons as a narrow, narrower concept than just might I wish that this entity wasn't allowed to get this permit because I don't really like it being in my neighborhood. Is that fair? Your Honor, if you take the logical extension of TCEQ and Rio Grande LNG's arguments in this case, if you look at this map and you look at their repeated statements referencing a one mile or one and a half mile radius, not being anything beyond that being common to the general public, nobody for this facility would be able to have standing under those legal standards. So there's nobody in that realm? I mean period, not your client. I just mean in the world. Not that I am aware of. If you look at this map, it lists all of the hearing requesters that TCEQ denied everyone's hearing requests and it shows where they live. It also shows that one mile radius on the map. And this court has stated in Cedar Point Oil that an injury in fact need not be large. An identifiable trifle will suffice. Other courts such as the Second Circuit and LeFleur have said that likely exposure to new emissions from a proposed but not yet facility are certainly an injury in fact. And to go back to your question, Judge Haynes, about why the affected person language and how narrow or broad it is, TCEQ and Rio Grande LNG in their briefs do not disagree that that standard in Texas law is not narrower than Article 3 standing. And so the factors and the whole standard has to be read in light of Article 3 standing. This is also consistent with TCEQ's commitments to EPA specifically under the Clean Air Act to keep its delegated authority to administer these permits. Do you use Article 3 to interpret it then? Yes, Your Honor, that's our position and the other parties have not contested that. TCEQ in 2015 in a rulemaking stated in response to direct concerns from EPA about access to judicial review under the Clean Air Act, which EPA interprets must be equivalent to Article 3 standing, that TCEQ states, the Attorney General opinion specifically states any provision of state law that limits access to judicial review does not exceed the corresponding limits on judicial review imposed by the standing requirement of Article 3 of the United States Constitution. Okay. Your time is up. Thank you. I know you could probably talk about this all day. We have limits. All right, Mr. Steinbach for TCEQ. TCEQ.  Your Honor, my name is Mark Steinbach and I'm here on behalf of the Texas Commission on Environmental Quality. Today I will address TCEQ's decision denying the contested case hearing and counsel for Rio Grande will focus primarily on the merits of the complaints against the permit. The court should affirm TCEQ's order. Based on the distance the petitioners live and work from the proposed site, the lack of specific… We've got this argument that really no one can get a contested hearing. If you narrow the scope enough of the miles, then the company is always going to get their way. So the question is, is there a scenario where there could be no one who is an affected person? No, I'm not. Could there be such a scenario? Is this case that scenario, as Ms. Gaines said? Well, based on the request that TCEQ received, yes. The answer to that question is yes. Now, could there be someone else who didn't submit a hearing request? Yes, there could be. And I'm not sure. It would depend on their interests that they could assert over the area. But if you adopt their argument, are you punishing the company for picking a remote location so that they wouldn't affect people? That's an excellent point, Your Honor. And industrial sites can and do probably choose to site their places in a way that will be away from populated areas. And I think that's a legitimate choice. So walk me down the path. Let's assume, arguendo, we affirm this additional emissions happen and shrimp start dying. Now what? Now who has a cause of action? Well, the first point I would make is that this permit is for air emissions. And these air emissions will have no impact on water quality. And I think that's a point that the requester in this case did not focus on. They start dying or whatever breathes the air in that area. Oh, wait. I'm sorry. I didn't hear that. Well, animals. Whoever it is. I don't know in Brownsville what the animals are that they raise. But whatever it is, they start dying. I mean, whatever animal it is, whether it's a shrimp or a pig or whoever. They all deer hunt. The deer start dying. Bambi dies from this emission. Then who has a cause of action? Well, I guess I would start by saying that, first of all, the emissions authorized under this permit must be within the National Ambient Air Quality Standards, which are set to prevent off-site harms. However, if that did happen and they were somehow violating the terms of the permit, there is an enforcement provision. And TCEQ or the state could bring in action to enforce this permit if they were causing, let's say, air emissions in many times the allowed limits. Okay. But I have one more question. Would the owner of the deer farm have a cause of action in that circumstance? So the scenario is the deer farmer in the area seeks to challenge the permit based on... No, I'm saying the emissions happen. The permit happens. So the site's already built. Then the air starts coming out, and contrary to all of this discussion, in fact, it does start killing the deer. Yes. I believe that would be a personal and justiciable interest because there you have an impact that's unique to that particular individual. And the emissions have affected them in a way that hasn't affected others. And so long as they brought their action within the statute of limitations, I think they would have that. But you're saying they have to wait for that? Yes. I believe so. So the petitioner's hearing request, if we could just turn to their hearing request. This is an important point. They only identified two individuals with standing in their own right to bring the request. And that was Lila Burnell and Erica Avila. The other individuals named in their hearing request could not be considered because under TCEQ's rules, they're very specific. You have to name and identify the person who is seeking the hearing request. And you cannot add additional parties in your reply before the commission, which is what they did. So for Ms. Burnell and Avila, a key factor supporting the commission's decision was the distance that they live and work from the proposed facility. For Ms. Burnell, she lives 18 miles away from this site. And Ms. Avila lives five and a half miles. And they both work miles away from the site as well. Both of them expressed concern about increased air emissions impacting their health and the risk of accidents and explosions. If we turn to the accidents and explosions first, first of all, those concerns are entirely speculative. There's no evidence of an imminent explosion from this facility. And second of all, they're common to the general public. And so they fail to meet the effective person's needs. And this whole issue of the general public isn't just something random. The Texas Administrative Code says that an interest common to members of the general public does not qualify as a personal judicial interest. That's exactly right. So whatever Article III standing may tell us, that is what the administrative code tells us. And that's fairly specific. So this general public issue is not just something we're randomly talking about. That's right. And with regard to the impacts of the site, TCQ begins with the assumption that all the air contaminants are modeled to be within the national ambient air quality standards. And the record supports that. The modeling shows that. And then if we move out miles away from that, the actual site where Ms. Avila and Ms. Burnell live and work, the concentration of air contaminants will be extremely small. And that supports the TCQ's decision here, finding, based on the dispersion effects, based on the modeled emissions, being compliant with the NAAQS at the fence line, there's really no impact at that distance. That sounds kind of merits-based, you know. And I realize that there is some overlap between the two, but your argument seems to be, oh, this is going to be lovely. There isn't going to be any impact on the environment. It will all be wonderful. And therefore, why do these people care? Well, of course, they don't agree with that. And that's why they want the contested case hearing, so that they can come in and show that they think y'all haven't done your job. Isn't that kind of core here? Yes, that's absolutely correct. But I would point out that, and this goes to the way the contested case hearing works, Texas law is clear that the party seeking a hearing has the burden of demonstrating to the commission they're an affected person. So this is not like a pleading standard, where it's if you just make some allegations that you'll be harmed, then you're over the line. But that doesn't mean the requester has to prove the merits. We agree with that. It does mean that they must demonstrate how they are impacted in a way that's different from the general public. So it's not enough just to say, well, I'm concerned. I'm concerned about my health. I'm concerned that this might affect me. They need to come forward with evidence. And TCEQ's rules specifically contemplate that. It authorizes the commission to review expert reports, affidavits, other sources of information to evaluate these requests and not simply to take assertions of being affected at face value. I would want to address LeFleur. The petitioner mentions LeFleur. In that case, yes, the court did find exposure to emissions within the NACs to be an injury in fact, but this was because the plaintiff in that case lived and worked within a few blocks of the proposed facility. The court should reject taking this concept to the extreme proposed by the petitioners, which is that exposure to any amount of an air contaminant, even to minimum amounts, miles away from the source and without any accompanying evidence of a health impact is also an injury in fact. Encountering individual molecules of NOx, I mean, that's essentially where we're at with this, other criteria pollutants in the ambient air cannot be the standard. That cannot show a concrete injury and I would add, moreover, it would be difficult for TCEQ to administer such a standard. The modeling software TCEQ uses for its PSD review can accurately model emissions up to 50 kilometers from the source, but the software was not designed to show where the level of emissions go down to zero. And so implementing any exposure standard for affected persons would be difficult for TCEQ to administer simply because the agency can't say where exposure goes down to zero. And that may in fact be 100 kilometers away or even more. And so that simply cannot be it. And so what the standard is is for the petitioners or the hearing requesters to put forward some interest, some evidence of how this will impact them in a unique way. I also wanted to address Cedar Point Oil and Laid Law and the other cases the petitioner cited. But there, in those cases, there was an undisputed concrete harm in the form of illegal discharges that had, that interfered with the plaintiff's use of specific natural resources. And there's simply no evidence here that the petitioners made such similar assertions here. So those cases really don't apply. And I would add, just for example, in Cedar Point Oil, the plaintiff had observed discolored water, oil, and grease and had detected unpleasant odors in the vicinity of the water that they used. I mean, there's nothing like that in this case. There's no tangible effects on them or even an imminent tangible effect on them in that way. I would also point to another case from this court. So, Texas United for Safe Economy versus Crown Central Petroleum, 207 F3D 789. In that case, this court held that breathing and smelling polluted air satisfies injury and fat. But polluted air in that case meant something more than I have encountered a molecule of NOx in my daily life. The plaintiff described overpowering sulfurous odors at their home and in their yard, and because in that case, the defendant was violating its air permit. But with a proposed site like this, the petitioners have not shown an imminent concrete injury based merely on theoretical exposure. Yeah, I mean, the problem I have with too narrow a view of affected persons is wouldn't we all rather avoid everybody, you know, the deer dying and everybody getting sick, than have to wait for that? And that's the whole notion of this contested case hearing. That's a whole notion of challenging the permit rather than waiting for all of this to evolve, right? That's exactly right. And so, where is that line? Yes, and I think just the concept of identifying something that's unique to you, to your business, or to your interactions in life, that's really the standard. I mean, because the concern is, as Your Honor pointed out, anyone can drive down State Highway 48. And so, if that's the standard, then it opens it up to an enormous number of people. And so, I think there, the distinction between bystander and someone who's truly affected by a proposed site evaporates. Okay, if the Court has no further questions. Thank you. Thank you. May it please the Court? Beth Petroni on behalf of the intervener. My primary role today is to address the merits of the permit. Although, as we have indicated in our briefing, we agree with TCEQ that if these individuals are not affected persons, which we don't believe they are, they would not have standing to challenge the merits of the permit. So, we don't think the Court needs to reach that issue. And the alternative, if for some reason the Court were to conclude they were affected persons, the appropriate determination would be to remand, and it would come back on a completely different record. So, the merits we don't think are actually an issue this Court needs to be concerned about, but obviously we've addressed them out of an abundance of caution in our brief, and can do so briefly today as well. The standard of review, as the Court is aware, is a very deferential one, especially on the very technical issues that are . . . Is the problem of not having the contested case hearing that it becomes kind of a one-sided process? I mean, it's a rare day that the person seeking the permit is going to say, oh, yeah, I'm going to destroy the Rio Grande and it'll be lovely. They're going to say, oh, we are so environmentally conscious and everything's great and the air will be beautiful and the sun will shine. And then there's no one to come in and show the other when you don't let them have the contested case hearing. Why not at least have the hearing? Well, I think in this situation, Your Honor, it is TCEQ's job to protect the environment for the state of Texas. I mean, that is their primary goal. And it's not as though they didn't perform their duties here. They took a year and eight months. There are 10,000 pages of record here, over 20 volumes, and thousands and thousands and thousands of pages where TCEQ is investigating and evaluating and asking questions, where there were two substantive revisions to the permit application here based upon the questions TCEQ was asking. There are very complicated formulaic changes to the air emissions. There were two revisions to the air quality analysis protocol based upon the scrutiny that was being given this permit. So you don't have to go to a contested case with an affected person for the appropriate analysis of the protection of the air quality of Texas to have been made. The TCEQ is charged with that. And here they did that. The first time that a governmental agency was accused of maybe not being thorough or not doing their job. They don't always have adequate staffing and so on and so forth. You know, I don't want to get in the middle of that. I'm not trying to challenge the TCEQ per se. I'm just saying that's why citizens who consider themselves affected, you know, want to be heard. And this is the mechanism for that. I'm just saying that it seems kind of one-sided here. Well, it in fact is not one-sided. There were 109 pages of responses to something like 76 specific issues raised. This is not a situation where the public comments were ignored. The public comments were taken into consideration in significant detail, not just by the executive director of TCEQ in his analysis, but also by expert reports that were provided that responded to the issues. So this was not a, this is certainly not a situation where TCEQ was understaffed and wasn't performing its duties. There's 10,000 pages in the record to prove otherwise. And these particular petitioners just simply could not establish affected persons. We're not saying there's never a situation where TCEQ would recognize an affected person. And even in this circumstance, there could be an affected person that did not apply for a contested case. But these petitioners do not qualify based upon the affected case analysis, which is a deferential one, a very technical one that involves air dispersion and air quality analysis. It involves taking into consideration that Cameron County is an attainment area, which means there are very little pollutant there in existence at the time. It involves taking into consideration that RGL&G chose a site that was very, very sparsely populated, that they in fact did that out of consideration for the impact of this facility on the environment. So all of those things are things that are taken into consideration. And TCEQ has discretion to say, in this particular instance, based upon these air emissions, based upon this air quality dispersion model that we've done, and based upon who lives where and what harm they've claimed, they absolutely are correct to have said, this particular situation, no affected person has applied for a contested case. And a contested case is not necessary here. They did their due diligence. They very significantly scrutinized this permit. And because they did that, it's entitled to deference from this court. So if we got to the merits, we would be deferential too? If you got to the merits, you would be deferential. And that's because they're highly technical issues. So for example, one of the three areas that they challenge is a backed analysis, which is an analysis of the best available control technology to be used. There are 76 pages in the permit application that go through the backed analysis, and it was highly scrutinized by TCEQ. TCEQ themselves considered 86 pages of different technologies to make sure that the technologies being used were the ones that would be the most technically feasible, but also have the least emissions. They excluded things they were entitled to exclude, like redefining the source, experimental technologies that weren't available in the United States, that weren't available with the facility. So an example are the electric compressors that have been made an issue of. Electric compressors, as opposed to gas turbines, it's probably indisputable that they have different emissions, correct? But here, TCEQ determined it was dispositive that the electric grid in Brownsville, Texas, would not sustain enough electricity to run electric compressors at this facility. That's a technical issue that was reviewed and analyzed by both RGL&G and TCEQ. And the idea that we then needed to consider electric compressors when it was entirely infeasible with this project is just something this court needs to give deference to. The same with the aeroderivative turbines that they've made an issue of. There you have a situation where RGL&G would have had to entirely redesign its plant, because for every available aeroderivative turbine, you would have had to have five of those to every two of the gas turbines that were proposed. That's a total redesign of the facility which is not required under EPA regulations. So these are the types of things that the petitioners have challenged on the merits that are entirely technical issues. The same with the growth analysis and the nitrous oxide emissions from the warm vessels. Those are things that this court should give substantial deference to TCEQ for their analysis. Okay, thank you. Can I ask one question before you sit down? Did the commission require the plant to redesign or change anything from its original design? I don't think that the commission necessarily required a redesign. They certainly didn't require a substantial redesign. For example, you must use five of these turbines to every two you were going to use. There were certainly questions raised about are you using the best available technology to control pollution here? And they analyzed that, not just for the turbines, but for all sorts of other pieces of equipment that were going to be used at the facility. And they went through an entire analysis both under the federal-backed standards and the state-backed standards and concluded that the best available technology was being used in all areas. Okay, thank you. And we'll now hear the rebuttal from Ms. Gaines. Thank you, Your Honors. I have six points in rebuttal. I still have four, Wyn, on the last one. I'm taking too much time. Go ahead. You keep hearing about distance and that maybe too many people would be impacted. This needs to be a case-by-case look at this facility. So when you're looking at other cases and you're looking at this facility, you have to look at the impact. Some of them are much smaller. They have cited Leflore, as we have in the Second Circuit. The highest air pollutant at that facility was 247 tons per year. So the distance that that person was from the facility versus here, one air pollutant here is over 3,000 tons per year, which is the highest air pollutants. You have to look at the magnitude. It has to be based on this facility. There's substantial evidence in the record that demonstrates that TCEQ is actually applying an arbitrary distance requirement to all facilities instead of looking at this facility and seeing whether there are impacts to people that have actually claimed personal judiciable interests. So to your question, Judge Hayden, there could be situations where a facility is far away and nobody has interests. Let's say I live close to downtown Houston. If I do, I live as close to the ship channel in Houston as the folks in Los Fresnos, which is where one of your plaintiffs lives, lives to this plant. Does that give me standing? Or am I an affected person where I could shut down any proposed plant? Or not shut down, but have a contested hearing regarding any proposed plant on the Houston ship channel? Are you referring to Ms. Burnell, who lives over 18 miles away? First, I will answer your question. First, I would point out that she works five miles from the facility. She has claimed extensive economic interests to her business, and that will be harmed by this facility. So we're not focusing on where she lives, but where she works. But to address your... My hypothetical... Yes. To answer your question, it depends on the facility that's being built. Is it a Clean Air Act facility? Is it a new facility? Is it an amendment? When you're reading the case law, you have to look at what type of facility it is, what the magnitude of emissions. It has to be based on the evidence in the record. And as you said, Judge, it would be you get to go to a contested case hearing. Then you have to put on the merits of your case. You don't get to say, I'm an affected person, I'm going to shut down this plant. You have to go to the contested case hearing and then prove your case on the merits. The applicants in Rio Grande LNG's response to hearing requests, which is in the record at 7502, they state, the commission has long accepted that for purposes of air permit applications such as the application at issue, persons who reside more than one mile from the facility are not an affected person entitled to a contested case hearing. This is because the applicant is required to demonstrate that there will be no adverse effect on the human health or the environment at the property line of the applicant. That is the definition of the facility. That is their burden on the merits. They are stating that TCEQ is applying a one mile radius regardless of the application. That is the definition of arbitrary and capricious. You're not looking at the actual facts for this facility. We have pointed to evidence that shows that not a de minimis amount above the significant impact level over 14 miles from this facility. Several of the cases that were cited by opposing counsel are existing facilities and they were citizen suits brought as enforcement cases. That's a very different posture where you are saying they are violating their permit. This is an existing facility. I can smell something. No one can smell something from this facility that is not built yet. You have to look at the interest in the context. That's the hard part. Like I said, I can understand wanting to prevent the explosion but you can always say nobody ever likes to have a plant built in their area. You can always say I wish this wasn't coming and that just isn't enough to make you something different from the general public which is from the code. It's not something we're just making up. There is a concept in Article 3 standing law of particularized injuries. The injury has to be particularized. It's actually not that different from Article 3 standing. It's not looking at how many people would be impacted. It's whether you actually have claimed a particularized judiciable interest. On the merits, very briefly, TCEQ cannot have it both ways. They cannot say on one hand, affected person status is narrow. Nobody here can get a contested case hearing and at the same time you have to go through a contested case hearing to how EPA interprets the Clean Air Act. I think what they're saying is if we think that the decision of the TCEQ is wrong to refuse a contested case hearing then we should have a contested case hearing rather than decide ourselves whether you need five whatever's instead of two and all of the technicalities. I may have misspoke, Your Honor. What I was referencing is we have two alternative requests for relief. Yeah, no, I get that. But their argument is you should have the contested case hearing if you have the standing to get to the permit I think is what they're saying. Yes, and that is what petitioners believe is the problem. I personally think that makes sense but, you know, it's fine. Okay, was there anything really key in the six that you didn't get to say? I'll give you 30 seconds if there was. Your Honor, you asked a question. My assertion and belief is that there were no changes made in the response to comments by TCEQ. And petitioners raised this is not a situation where petitioners are going in and saying we don't want this facility. We're concerned and they don't give any substantive arguments. We submitted 26 pages of detailed technical questions that we believe should be addressed at a contested case hearing. I appreciate both sides and the case is under submission and we will take a 10-minute break.